**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY, | : : : : |
| *Plaintiff*, | : : |
| v. | : Case No. : |
| HAH Holdings, LLC dba Help at Home, | : : |
| *Defendant*. | : : |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Ironshore Specialty Insurance Company ("Ironshore"), pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, files this Complaint for Declaratory Judgment against Defendant HAH Holdings, LLC dba Help at Home, and in support thereof, states as follows:

**INTRODUCTION**

1. This is an insurance coverage dispute arising out of two lawsuits filed in Pennsylvania state court in November 2024 and May 2025 by Elaine M. Garcia ("Underlying Plaintiff") as Executrix of the Estate of Frank M. Garcia ("Garcia"), an individual who received home healthcare services from Edward Cruz ("Cruz") and was allegedly abused by Cruz in connection with such services (the "Underlying Lawsuits").

2. The Underlying Plaintiff asserts causes of action against several defendants, including Help at Home, LLC, Help at Home, LLC d/b/a Help at Home and Excel Companion Care, LLC d/b/a Help at Home, for Negligence and Recklessness (Count I); Survival Action (Count II); and Wrongful Death (Count III).

3. Ironshore issued consecutive Miscellaneous Medical Facilities and Providers Professional Liability and Other Liability Policies to HAH Holdings, LLC dba Help at Home for

consecutive policy periods beginning in 2021 through the present with $1,000,000 Each Claim Limits of Liability.

4.      Ironshore also issued consecutive Follow Form Excess Policies to HAH Holdings, LLC d/b/a Help at Home beginning in 2021 through the present with $10,000,000 Each Claim and Aggregate Limits of Liability.

5.      HAH Holdings, LLC dba Help at Home ("Help at Home") seeks insurance coverage from Ironshore for the Underlying Lawsuits under the Ironshore policies. Ironshore brings this action to obtain a declaratory judgment that it owes no coverage to Help at Home or any Help at Home entity for the Underlying Lawsuits.

6.      Alternatively, Ironshore seeks a declaration of its rights and obligations under the relevant Ironshore policies with respect to the Underlying Lawsuits.

### PARTIES

7.      Ironshore is an insurance company that provides specialty and excess and surplus insurance-based solutions for US-based businesses with complex and unique risks. It is incorporated in Arizona and maintains its principal place of business in Massachusetts. Accordingly, Ironshore is a citizen of Arizona and Massachusetts.

8.      HAH Holdings, LLC is a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, Illinois.

### JURISDICTION AND VENUE

9.      This court has diversity jurisdiction over this action pursuant to 20 U.S.C. § 1332 because it involves citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Ironshore is a citizen of Arizona (where it is incorporated) and Massachusetts (where it maintains its principal place of business). *See* 28 U.S.C. § 1332(c)(1).

11. HAH Holdings, LLC is a limited liability company. For diversity purposes, LLCs are citizens of any state of which their members are citizens. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 102 (3d Cir. 2012).

12. After a good-faith investigation into prior court filings and other publicly available documents, Ironshore believes that HAH Holdings, LLC's members are Wellspring Capital Partners V, LP ("Wellspring"), a limited partnership, The Vistria Group, LP ("Vistria"), a limited partnership, and Centerbridge Partners, LP ("Centerbridge"), a limited partnership.

13. For diversity purposes, the citizenship of a limited partnership is based on the citizenship of all of its partners. *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 37 (3d Cir. 2018).

14. After a good-faith investigation into prior court filings and other publicly available documents, Ironshore believes that none of the partners of Wellspring, Vistria or Centerbridge are citizens of Arizona or Massachusetts.

15. Therefore, there is complete diversity of citizenship between Ironshore and HAH Holdings, LLC.

16. Ironshore will further confirm its good-faith belief pursuant to HAH Holdings, LLC's Diversity Disclosure Statement, which HAH Holdings is required to file with the Court pursuant to Fed. R. Civ. P. 7.1 (a)(2) when jurisdiction is based on diversity.

17. Ironshore also intends to confirm its good-faith belief regarding the citizenship of all members of HAH Holdings, LLC and all partners of Wellspring, Vistria and Centerbridge through discussions with counsel and/or immediate discovery.

18.     Further, the amount in controversy exceeds $75,000, exclusive of interest and costs, because the policies at issue here have combined Each Claim limits of $11,000,000. *See Weber v. Nationwide Mut. Ins. Co*, No. 12-02671, 2012 WL 2157712, at *2 (E.D. Pa June 14, 2012) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)) (courts may look to the limits of an applicable insurance policy to determine the amount in controversy).

19.     Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2) because the events leading to the Underlying lawsuits and the Underlying Lawsuits leading to the insurance coverage dispute took place within this district.

## BACKGROUND

## I.     THE POLICIES

### A.     The Primary Policies

20.     Ironshore issued consecutive Miscellaneous Medical Facilities and Providers Professional Liability and Other Liability Policies to HAH Holdings, LLC dba Help at Home, including policy no. HC7AACIPQU001 for the policy period April 30, 2022 to April 30, 2023 ("22-23 Primary Policy") and HC7AACIPQU003 for the policy period April 30, 2024 to April 30, 2025 ("24-25 Primary Policy") with limits of $1,000,000 Each Claim and $3,000,000 and $4,000,000 in the Aggregate, respectively.[1] A copy 22-23 Primary Policy is attached hereto as **Exhibit 1** and a copy of the 24-25 Primary Policy attached hereto as **Exhibit 2**.

21.     The Primary Policies state, in relevant part, that the "**First Named Insured** will act on behalf of all **Insureds** with respect to the giving or receiving of any notices under this Policy . . ." (Exs. 1, 2, § IV (M)).

---

[1] Unless noted otherwise herein, the allegations in this Complaint refer to the terms, provisions and conditions as set forth in the April 30, 2024 to April 30, 2025 policy, which are substantially similar and not materially different from the terms, provisions and conditions in the policies issued in prior and subsequent policy periods.

4

22.     As is relevant here, the Primary Policies provide Professional Liability and General Liability coverage. (*Id.*, § I (A & B)).

23.     Insuring Agreement A of the Primary Policies provide as follows:

**I. INSURING AGREEMENTS**

(A) **Occurrence Professional Liability Insurance:**
The Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for a **Professional Services Wrongful Act** that is caused by an **Occurrence** that takes place during the **Policy Period**, subject to the applicable Limit of Liability.

(*Id.*, § I (A)).

24.     A **Professional Services Wrongful Act** is defined as "any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in rendering, or failing to render, **Professional Services** that result(s) in **Bodily Injury**." (*Id.*, § II (II)).

25.     **Professional Services** is defined to include **Medical Services**. (*Id.*, (HH)).

26.     **Medical Services** is defined as:

health care, medical care, or treatment provided to any individual, including without limitation any of the following: medical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health care; the furnishing or dispensing of medications, drugs, blood, blood products, or medical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; and the handling of, or the performance of post-mortem examinations on, human bodies.

(*Id.*, (W)).

27.     The term **Professional Services Wrongful Act** also includes "any actual or alleged physical and/or sexual abuse." (*Id.*, (II)).

28.     The Primary Policies also include the following Endorsement:

5

**CLAIMS-MADE COVERAGE FOR PHYSICAL AND SEXUAL ABUSE**

In consideration of the premium charged,

(1) With respect *solely* to any **Claim** for **Physical or Sexual Abuse** (as defined below) under INSURING AGREEMENT (A) of this Policy, and subject in all events to the applicable Limit of Liability, the Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** for **Physical or Sexual Abuse** *only* if such **Physical or Sexual Abuse** was committed or allegedly committed by the **Insured** on or after the **Retroactive Date** set forth below, and provided that such **Claim** is first made against the **Insured** during the **Policy Period** and in accordance with paragraph 2. below.
  - Retroactive Date: 4/30/2017

(Ex. 1, End. 13; Ex. 2, End. 15).

29.    The term "**Physical or Sexual Abuse**" "means (a) any contact intended to cause feelings of intimidation, pain, injury, or other physical suffering or harm, or (b) any welcome or unwelcome contact, physical acts, gestures or spoken or written words of a sexual nature, including without limitation sexual intimacy (even if consensual), sexual molestation, sexual assault, sexual battery, sexual abuse, sexual harassment, sexual exploitation or any sexual act.. [sic]" (*Id.*).

30.    Insuring Agreement B provides:

(B) **Occurrence General Liability Insurance:**
The Insurer will pay on behalf of the **Insured** any **Loss** that the **Insured** is legally obligated to pay as a result of any covered **Claim** alleging **Bodily Injury**, **Property Damage**, **Advertising Injury** or **Personal Injury** that is caused by an **Occurrence** that takes place during the **Policy Period,** subject to the applicable Limit of Liability.

(*Id.*, § I (B)).

31.    An "**occurrence**" is defined as "any accident, including continuous or repeated exposure to the same harmful conditions, which results in injury or damage neither expected nor

6

intended by the **Insured**." (*Id.*, II (BB).

32.     The General Liability Coverage Part contains an exclusion for injuries arising out

of a **Professional Services Wrongful Act**. (*Id.*, § III (B)(1)).

33.     The Primary Policies also contain the following condition which is applicable to

all coverage parts:

(F)     Mergers, Acquisitions or Newly Created Entities:

If, during the **Policy Period**, the **Named Insured** acquires or creates another entity or subsidiary or becomes a member of a joint venture or partner in a partnership, or if the **Named Insured** merges or consolidates with another entity such that the **Named Insured** is the surviving entity (any of which events is referred to as a "Transaction" in this GENERAL CONDITION (F)), the Insurer will have the option of providing coverage in respect of such entity or subsidiary, and no coverage will be afforded under this Policy for any **Claim** in any way involving the entity or subsidiary that is acquired, created, merged or consolidated with, unless:

1)  the **Named Insured** gives the Insurer notice of such Transaction as soon as possible but in no event later than ninety (90) days after the effective date of the Transaction;

2)  the **Named Insured** gives the Insurer such information regarding the Transaction as the Insurer requests; and

3)  the **Named Insured** accepts any terms, conditions, exclusions, and limitations and pays any additional premium as the Insurer, at its sole discretion, imposes.

If the Insurer, at its sole discretion, elects to provide coverage in respect of such entity or subsidiary, this Policy shall not apply to, and the Insurer will not pay any **Loss** or **Defense Expenses** for, any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, any **Occurrence** or **Wrongful Act**[2] happening before:

a)  the effective date of the Transaction; or

---

[2] A **Wrongful Act** is defined as "any **Professional Services Wrongful Act** or **Employee Benefits Wrongful Act**."

b) the effective date of coverage under this Policy for such entity or subsidiary as set forth in an endorsement to be issued to extend coverage to such entity or subsidiary, whichever is later.

For purposes of this GENERAL CONDITION (F), "subsidiary" means any entity for which the **Named Insured** owns or possesses fifty percent (50%) of the issued and outstanding capital stock, or has or controls the right to elect or appoint more than fifty percent (50%) of the directors or trustees.

(*Id.*, § IV (F)).

34.    The Primary Policies also contain the following exclusion that is applicable to all coverage parts:

Except as otherwise expressly provided in this Policy, this Policy does not apply to, and the Insurer will not pay **Loss** or **Defense Expenses** for any **Claim** based upon or arising out of any actual or alleged:

\*\*\*

liability of any subsidiary as described in GENERAL CONDITION (F) or its **Insured Persons** acting in their capacity as such for any **Claim**, **Occurrence**, fact, circumstance, situation, transaction, event or **Wrongful Act** or series of **Claims**, **Occurrences**, facts, circumstances, situations, transactions, events or **Wrongful Acts** happening before the date such entity became a subsidiary.

(*Id*. § III (E)(7)).

35.    The Primary Policies also contain a Criminal Acts Exclusion that applies to all coverage parts and excludes any **Claim** based upon or arising out of any actual or alleged "dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**."

36.    The Primary Policies define "**Insured**" to include "any **Employee** … acting within the capacity and scope of his or her duties as such for the **Named Insured**." (*Id.*, (E)(2)).

**B.    The Excess Policies**

37.    Ironshore also issued consecutive Follow Form Excess Policies, to HAH Holdings, LLC d/b/a Help at Home, including policy No. HC7AAB850C002 for the April 30, 2022 to April

30, 2023 policy period ("22-23 Excess Policy") and policy No. HC7AAB850C004 for the April 30, 2024 to April 30, 2025 policy period ("24-25 Excess Policy"). A copy of the 22-23 Excess Policy is attached as **Exhibit 3** and a copy of the 24-25 Excess Policy attached hereto as **Exhibit 4**.

38.     The Excess Policies have a Per Claim and Aggregate limit of liability of $10,000,000 and are excess of the coverage provided by the Primary Policies. (Exs. 3, 4, Declarations ITEMS 3 and 4).

39.     The Excess Policies provide insurance in conformance with the terms, conditions, limitations, exclusions, definitions and endorsements of the Primary Policies except as otherwise stated in the Excess Policies. (*Id.*, Declarations Item 4(a), § I).

40.     The Excess Policies state, in relevant part, that the "entity first named in ITEM 1 of the declarations shall be the sole agent, and shall act on behalf of the **Insured** with respect to all matters under this Policy . . ." (*Id.*, § VII (E)).

## II.     THE UNDERLYING LAWSUITS

41.     The Underlying Plaintiff filed two lawsuits against various Help at Home entities.

42.     The first lawsuit was filed on November 18, 2024 against Open Systems Healthcare, Inc. d/b/a Open Systems Healthcare ("OpenSystems") and Help at Home, LLC, in the Philadelphia Court of Common Pleas, July Term 2024 No. 03336 ("Lawsuit 1"). A copy of the Complaint in Lawsuit 1 is attached hereto as **Exhibit 5**.

43.     A second lawsuit was filed on May 8, 2025 against Help at Home, Inc. a.k.a. Help at Home and Help at Home Services, LLC a.k.a. Help at Home, in the Philadelphia Court of Common Pleas, October Term 2024 No. 03588 ("Lawsuit 2").

44.    An Amended Complaint was filed in Lawsuit 2 on March 13, 2026 against Help at Home, LLC d/b/a Help at Home and Excel Companion Care, LLC d/b/a Help at Home. A copy of the Amended Complaint in Lawsuit 2 is attached hereto as **Exhibit 6**.

45.    Simultaneously with the filing of Lawsuit 1, another lawsuit was filed related to Cruz's abuse of Garcia against Open Systems in the Philadelphia Court of Common Pleas, May Term 2024 No. 03417 ("OpenSystems Lawsuit"). A copy of the Complaint in the OpenSystems Lawsuit is attached hereto as **Exhibit 7**.

46.    Lawsuit 1, Lawsuit 2 and the OpenSystems Lawsuit have been consolidated and Lawsuit 2 has been designated as the "lead case."

47.    In general, the Underlying Lawsuits allege that beginning in early 2020, Cruz began physically and mentally abusing Garcia ultimately leading to Garcia's death in October of 2022. (Ex. 5, ¶¶ 21-24, 33, 38, 48).

48.    It is alleged that at all material times, Cruz was an agent or employee of the Defendants, defined in Lawsuit 2 to include Excel Companion Care, LLC d/b/a Help at Home and Help at Home, LLC d/b/a Help at Home. (*Id.*, ¶¶ 5, 11).

49.    It is alleged that Cruz was hired by the Defendants[3] in December of 2019. (*Id.*, ¶ 16).

50.    It is alleged that beginning in January 2020, Cruz began to work shifts as a direct care worker for Garcia and that in early 2020, Cruz became Garcia's exclusive caregiver. (*Id.*, ¶ 22).

51.    It is further alleged that shortly thereafter, Cruz and his girlfriend moved into Garcia's home and "essentially imprisoned him, preventing him from leaving his house and

---

[3] Upon information and belief, Cruz was hired by OpenSystems, not any Help at Home entity.

limiting his contact with friends and family." (*Id.*, ¶ 24).

52.    It is alleged that Cruz and his girlfriend "physically and emotionally abused" Garcia. (*Id.*, ¶ 25).

53.    The Underlying Lawsuits further allege that Garcia was prevented from seeing a doctor and not given medication. (*Id.*, ¶ 34).

54.    It is alleged that Cruz continued to abuse Garcia until Garcia was ultimately removed from Cruz's care on September 23, 2022, when Garcia was transferred to Temple University Hospital. (*Id.*, ¶¶ 38, 39).

55.    It is alleged that Garcia was extremely malnourished when he arrived at the hospital and had a large pressure sore on his sacrum. (*Id.*, ¶¶ 39-41, 44).

56.    Garcia was thereafter transferred to a skilled nursing facility and died on October 29, 2022. (*Id.*, ¶¶ 47-49).

57.    Cruz was charged with 15 crimes related to the abuse. He ultimately entered guilty pleas to two first-degree felony charges and one second-degree felony. (*Id.*, ¶ 50).

58.    Cruz was sentenced to prison in connection with his crimes. (*Id.*, ¶ 51).

59.    The Underlying Lawsuits set forth causes of action for (1) Negligence and Recklessness (Count I); (2) Survival Action (Count II); and (3) Wrongful Death (Count III). (*Id.*, ¶¶ 52-81).

60.    Upon information and belief, Excel Companion Care LLC d/b/a Help at Home and Help at Home of Delaware, LLC as the buyer and Open Systems as the seller entered into a Asset Purchase Agreement on September 6, 2022 whereby Help at Home of Delaware, LLC acquired certain assets of OpenSystems. The closing date for the acquisition at issue here occurred on September 7, 2022.  (Ex. 6, ¶ 6).

11

<u>**COUNT I – DECLARATORY JUDGMENT:**</u>
<u>**NO COVERAGE UNDER THE GENERAL LIABILITY COVERAGE PART**</u>

61.     Ironshore incorporates and realleges each and every allegation set forth in paragraphs 1 through 60 of this Complaint as if fully stated herein.

62.     This is a claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Ironshore seeks a judicial determination of its rights and duties under the Ironshore Policies.

63.     A real and actual controversy exists between Ironshore and Help at Home concerning whether Ironshore is obligated to provide insurance to Help at Home in connection with the Underlying Lawsuits.

64.     Ironshore seeks a declaration that it is not obligated to provide insurance to Help at Home under the General Liability Coverage Part of the Primary Policies because, to the extent that the General Liability Coverage Part is triggered, coverage is excluded pursuant to the **Professional Services Wrongful Act** Exclusion.

65.     The General Liability Coverage Part excludes coverage for injuries arising out of a **Professional Services Wrongful Act**. (**Exhibit 1**, § III (B)(1)).

66.     A **Professional Services Wrongful Act** is defined as "any actual or alleged act, error or omission, or series of acts, errors or omissions, by an **Insured** in rendering, or failing to render, **Professional Services** that result(s) in **Bodily Injury**." (*Id*., § II (II)).

67.     The term **Professional Services Wrongful Act** also includes "any actual or alleged physical and/or sexual abuse." (*Id*.)

68.     **Professional Services** includes **Medical Services** which are defined, in relevant part, to include "health care, medical care or treatment provided to any individual, including without limitation … the furnishing or dispensing of medications . . ." (*Id*., (W)).

69.     The Underlying Lawsuits allege that Garcia was injured as a result of Cruz's failure

to provide proper medical care, such as preventing Garcia from seeing a doctor and failing to give him medication. (Ex. 5, ¶¶ 33-34).

70.  It is further alleged that Cruz physically and mentally abused Garcia. (*Id.*, ¶ 25).

71.  Accordingly, the Lawsuits are based on and arise out of a **Professional Services Wrongful Act**.

72.  As such, coverage is precluded under the General Liability Coverage Part of the Primary Policies by the **Professional Services Wrongful Act Exclusion**.

**WHEREFORE**, Ironshore Specialty Insurance Company respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, in its favor – and against Defendant – finding that there is no coverage for the Underlying Lawsuits under the General Liability Coverage Part of the Primary Policies pursuant to the **Professional Services Wrongful Act** Exclusion; and for such further relief as this Court deems just and appropriate.

## COUNT II – DECLARATORY JUDGMENT: COVERAGE IS PRECLUDED BY CONDITION F

73.  Ironshore incorporates and realleges each and every allegation set forth in paragraphs 1 through 72 of this Complaint as if fully stated herein.

74.  The Primary Policies, and thus the Excess Policies, contain Condition F, which provides that if, during the **Policy Period**, the **Named Insured** acquires another entity, Ironshore will not pay any **Loss** or **Defense Expenses** for any **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Occurrence** or **Wrongful Act** happening before the later of the effective date of the Transaction or the effective date of coverage for the acquisition. (Exs. 1, 2, § IV (F)).

75.     In connection with the acquisition, Ironshore issued an endorsement providing coverage for the additional exposure in connection with the acquisition, which coverage had an effective date of November 7, 2022. (Ex. 1, End. 19).

76.     The Underlying Lawsuits allege that Cruz began abusing Garcia in 2020 and that the abuse continued until September 23, 2022 when Garcia was removed from Cruz's care. (Ex. 5, ¶¶ 22-24, 39).

77.     Accordingly, the Underlying Lawsuits are based upon and arise out of Cruz's **Wrongful Acts** that took place before November 7, 2022.

78.     Therefore, Ironshore has no duty to defend or indemnify Help at Home in connection with the Underlying Lawsuits.

**WHEREFORE**, Ironshore Specialty Insurance Company respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, in its favor – and against Defendant – finding that there is no coverage for the Underlying Lawsuits under the Ironshore Policies pursuant to Condition F; and for such further relief as this Court deems just and appropriate.

**COUNT III – DECLARATORY JUDGMENT:**
**EXCLUSION E(7) PRECLUDES COVERAGE**

79.     Ironshore incorporates and realleges each and every allegation set forth in paragraphs 1 through 78 of this Complaint as if fully stated herein.

80.     The Primary Policies, and thus the Excess Policies, contain an exclusion that applies to all coverage parts that provides that coverage is not available for any **Claim** based upon or arising out of any actual or alleged liability of any subsidiary or its **Insured Persons** acting in their capacity as such for any **Claim**, **Occurrence**, fact, circumstances, situation, transaction, event or **Wrongful Act** or series of **Claims**, **Occurrences**, facts, circumstances, situations, transactions,

events or **Wrongful Acts** happening before the date such entity became a subsidiary. (Exs. 1, 2, § III (E)(7)).

81.     The Underlying Lawsuits allege that Cruz began abusing Garcia in 2020 and that the abuse continued until September 23, 2022 when Garcia was removed from Cruz's care. (Ex. 5, ¶¶ 22-24, 39).

82.     Help at Home did not acquire OpenSystems until September 7, 2022.

83.     Accordingly, the Underlying Lawsuits arise out of a series of **Wrongful Acts**, circumstances and events that happened before OpenSystems became a subsidiary of Help at Home.

84.     Therefore, Ironshore has no duty to defend or indemnify Help at Home in connection with the Lawsuits.

**WHEREFORE**, Ironshore Specialty Insurance Company respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, in its favor – and against Defendant – finding that there is no coverage for the Underlying Lawsuits under the Ironshore Policies pursuant to Exclusion (E)(7); and for such further relief as this Court deems just and appropriate.

<u>**COUNT IV – DECLARATORY JUDGMENT:**</u>
<u>**THE CRIMINAL ACTS EXCLUSION PRECLUDES COVERAGE**</u>

85.     Ironshore incorporates and realleges each and every allegation as set forth in paragraphs 1 through 84 of this Complaint as if set forth fully herein.

86.     The Primary Policies, and thus the Excess Policies, contain a Criminal Acts Exclusion that excludes any **Claim** based upon or arising out of any actual or alleged "dishonest, fraudulent, criminal or intentionally malicious act, error or omission by an **Insured**." (Exs. 1, 2, § III (E)(2)).

15

87.     The Primary Policies define "**Insured**" to include "any **Employee** … acting within the capacity and scope of his or her duties as such for the **Named Insured**." (*Id.*, § II (T)).

88.     Cruz is alleged to have been an **Employee** of Help at Home and/or OpenSystems and therefore qualifies as an **Insured**. (Ex. 5, ¶ 11).

89.     The Lawsuits further allege that Cruz was charged with 15 crimes related to his abuse of Garcia and that he entered guilty pleas to two first-degree felony charges and one second-degree felony charge. (*Id.*, ¶ 50).

90.     Cruz was sentenced to prison for these crimes. (*Id.*, ¶ 51).

91.     Therefore, the claims against Help at Home are based upon and arise out of an actual and alleged "dishonest, fraudulent, criminal or intentionally malicious act, error or omission" by Cruz, an **Insured**.

92.     Liability for Cruz's actions is imputed to Help at Home, and any other insured entity that has been, or may be, sued in the Underlying Lawsuits, to the extent that Help at Home was aware of or participated in such actions. (Ex. 1, 2, § III (E)(2)).

93.     Therefore, Ironshore has no duty to defend or indemnify Help at Home in connection with the Underlying Lawsuits to the extent that Help at Home was either aware of or participated in Cruz's actions.

**WHEREFORE**, Ironshore Specialty Insurance Company respectfully requests this Court enter declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, in its favor – and against Defendant – finding that there is no coverage for the Underlying Lawsuits under the Ironshore Policies pursuant to the Criminal Acts Exclusion; and for such further relief as this Court deems just and appropriate.

16

Dated: June 23, 2026

HANGLEY ARONCHICK SEGAL PUDLIN &
SCHILLER

_____
Ronald P. Schiller (Pa. ID. No. 41357)
Bonnie M. Hoffman (Pa. ID. No. 201140)
Eileen M. Bradley (Pa. ID. No. 326457)
One Logan Square, 27th Floor
Philadelphia, PA  19103
(215) 568-6200
rschiller@hangley.com
bhoffman@hangley.com
ebradley@hangley.com

*Attorneys for Plaintiff, Ironshore Specialty Insurance
Company*

17